UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-01594-PAB-STV

MIDTOWN INVESTMENTS, LP, a Delaware foreign limited partnership,

Plaintiff,

v.

AUTO-OWNERS INSURANCE COMPANY, a Michigan corporation,

Defendant.

---

**DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF THOMAS E. MILLER PURSUANT TO FED. R. EVID. 702**

---

Defendant Auto-Owners Insurance Company ("Auto-Owners") moves under Fed. R. Evid. 702 to exclude the testimony and opinions of Plaintiff's non-retained engineering expert, Mr. Thomas E. Miller.

**CERTIFICATE OF CONFERRAL**

Counsel for Auto-Owners has conferred with Plaintiff's counsel and Plaintiff is opposed to the relief requested in this motion.

**INTRODUCTION**

The opinions offered by Plaintiff's non-retained engineering expert Thomas E. Miller should be excluded pursuant to Rule 702 because his opinions lack a reliable foundation and methodology and are not relevant to this case. Each of Miller's opinions are deficient because (1) Miller's methodology and the basis for his opinions are not sufficiently developed or explained

in his report, (2) Miller does not consider alternate causes for the alleged damage, and (3) Miller's methodology (or lack thereof) has not been verified by the engineering community.

## BACKGROUND

This is a property damage insurance case allegedly arising from an April 17, 2018 wind storm in Denver. Auto-Owners issued an insurance policy to Plaintiff Midtown Investments, LP ("Midtown"). The Policy provides coverage for the approximately 55-year old property located at 4101 E Louisiana Ave, Denver, Colorado ("Property"), subject to the terms and conditions of the Policy (**Exhibit A**.) The Policy excludes coverage to the Property for, *inter alia*, wear and tear; deterioration; faulty, inadequate or defective design, specifications, repair, construction, materials, or maintenance. (**Exhibit A**, at Auto-Owners_000082-84.)

Following the storm, Plaintiff filed a claim for wind damage to the Property. At issue in this litigation is whether the Property's curtain wall was damaged by the storm and whether such damage warrants replacement of the curtain wall under the policy. In connection with its claim, Midtown retained public adjuster Taylor Bezek of C3 Group, Inc. (ECF No. 3 ¶ 13.) Thereafter, Midtown, through Mr. Bezek, engaged Miller to inspect the Property and assess the alleged damage, specifically the cause thereof. (ECF No. 3, ¶ 13; Excerpts from T. Miller Depo. Tr., 53:1-54:16, **Exhibit B**.) Concurrently, Auto-Owners retained a licensed professional architect, Jeff Anderson of J.S. Held, to inspect the Property. (ECF No. 3, ¶ 14.)

Following his purported inspections of the Property, Miller prepared a report dated July 1, 2019. (Miller's Report, attached as **Exhibit C**, and appendices thereto attached as **Exhibit D**.) Mr. Bezek submitted Miller's report to Auto-Owners, along with an estimate prepared by JRB Service, LLC for the removal and replacement of the entire existing curtain wall system for each

elevation of the Property, as well as the Property's entrance doors and operators. (ECF No. 3, ¶ 13; Ex. C; Ex. D, at Auto-Owners_000508.)

Mr. Anderson thoroughly inspected the Property, including the store front, on May 15, 2019 and July 24, 2019, and prepared a report containing his findings. Relying on Mr. Anderson's report, Auto-Owners determined that the claimed damage was not the result of wind, was otherwise subject to Policy exclusions, and therefore, not covered under the Policy. (Letter from Auto-Owners dated October 10, 2019, **Exhibit E**.) Midtown did not proffer any evidence to dispute Auto-Owners' coverage decision or rebut Mr. Anderson's observations and conclusions. Instead, Midtown sued Auto-Owners for breach of contract, bad faith and unjust enrichment. (ECF No. 3.) This Court dismissed Plaintiff's breach of contract claim on March 8, 2021. (ECF No. 50.)

On July 20, 2021, Plaintiff served its expert disclosures pursuant to Fed. R. Civ. P. 26(a)(2). (**Exhibit F**.) Plaintiff disclosed two retained experts pursuant to Rule 26(a)(2)(B), and eight non-retained experts pursuant to Rule 26(a)(2)(C). Among the non-retained experts, Plaintiff disclosed engineer Thomas Miller. (*Id*. at 5.) Plaintiff's disclosure merely states that Miller "may be offered as an expert witness in the areas of assessment of the wind loss and further damage caused thereby at the Property and the reasonable and necessary cost to repair and/or replace all of the windstorm damage attributable to the April 17, 2018 storm." (*Id.*)

## LEGAL STANDARD

Pursuant to Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

While the proponent of expert testimony is not required to prove that the expert's opinion is objectively correct, it bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence. *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999); *Benton v. Avedon Eng'g, Inc.*, No. 10-CV-01899-RBJ-KLM, 2012 WL 3399367, at *2 (D. Colo. Aug. 15, 2012) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 n.10 (1993)). "[A]ny inadequacy in the proof on any of Rule 702's elements renders the entire affected opinion inadmissible." *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008).

In evaluating proffered expert testimony under these rules, a district court must first decide "whether the reasoning or methodology underlying the testimony is [ ] valid." *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 (10th Cir. 2005) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93 (1993)). Second, the district court must inquire into whether proposed testimony is sufficiently "relevant to the task at hand." *Id.* Third, it must decide whether the testimony is reliable. To this end, a court's function is that of gatekeeper,

which it performs by making specific findings on the record. *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000). "[A]ny step that renders the analysis unreliable . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *Mitchell*, 165 F.3d at 782.

Additionally, "[u]nder the regime of *Daubert* . . . a district judge asked to admit scientific evidence must determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." *Id.* at 783. Whether the specific expert testimony at hand focuses upon specialized observations, the specialized translation of those observations into theory, a specialized theory itself, or the application of such a theory in a case, the expert's testimony often will rest "upon an experience confessedly foreign in kind to [the jury's] own. The trial judge's effort to assure that the specialized testimony is reliable and relevant can help the jury evaluate that foreign experience, whether the testimony reflects scientific, technical, or other specialized knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (holding the *Daubert* factors applicable to all types of experts).

## ARGUMENT

### I. THOMAS MILLER'S OPINIONS SHOULD BE EXCLUDED AS THEY FAIL TO SATISFY FED. R. EVID. 702

#### A. Miller's Report is Deficient on its Face.

Rather than provide a summary of the facts and opinions of which Miller is expected to testify, Plaintiff's expert disclosure states that Miller is expected to testify consistently with his inspections and opinions, observations, findings and conclusions contained in the documents prepared by him and produced by Plaintiff in this matter. (Ex. F, p. 5.) The only opinions or conclusions of Miller which have been disclosed in this matter are contained in his July 1, 2019

report.[1] As a result, Miller's report is a sufficient basis, standing alone, to determine whether his proffered opinions are admissible under the standards set forth within Federal Rule of Evidence 702 and the Supreme Court's decisions in *Daubert*, 509 U.S. 579. This Court cannot determine whether the reasoning or methodology underlying each of Miller's opinions meets the rigorous standards of Rule 702 and *Daubert* because Miller fails to include this necessary information in his report or other documents produced in this matter.

Miller submitted a very short report that includes seven "findings and conclusions" to which Miller offers "with a reasonable degree of professional probability." (Ex. C, MID 000740.) For his first opinion, he states, "Based on our inspections SEI observed direct physical damage to the store front. See attached photo catalogs in Appendix C1, C2 & C3." (*Id.* at ¶ 1.) Miller's second through sixth opinions merely state that he "concurs with Anchor Engineer," regarding certain observations or conclusions contained in Anchor Engineering's own report. (*Id.*, ¶¶ 2-6.) Miller's seventh opinion states, "The store front was damaged as the result of a storm occurring on or about April 17, 2018." (*Id.*, MID 000741, ¶ 7.)

Though Miller ostensibly references inspection(s) of the Property in which he participated, Miller's report does not include the fundamental explanation or observations from those inspections that support how or why he determined that there was damage to the Property and why he believes such damage was caused by wind. Nowhere in his report, or the appendices

[1] Contrary to Plaintiff's disclosure, Miller's report provides no opinion whatsoever as to the "reasonable and necessary cost to repair and/or replace all of the windstorm damage attributable to the April 17, 2018 storm." Moreover, Miller testified that he never provided any opinion as to the reasonable and necessary costs to repair or replace the allegedly damaged property, and does not recall reviewing any such costs. (Ex. B, 17:17-18:4, 66:25-67:8.)

attached thereto, does Miller ever identify which components or elevations of the Property he believes were damaged by the wind storm, or explain what facts or authoritative engineering data support his opinions.

In conclusory fashion, Miller opines that the store front sustained "direct physical damage" as a result of the wind storm. Notably, Miller's report fails to define or explain the term "direct physical damage." His report also fails to state or identify what specifically he observed at the Property that allegedly constitutes "direct physical damage" or why such purported damage warrants replacement of the entire Property's store front. *Id*. Although Miller references photo catalogs in the appendices attached to his report, the photographs provide no explanation of what is being depicted, and Miller acknowledged at his deposition that the photographs do not necessarily document any damage—let alone damage allegedly resulting from the storm. (Ex. B, 101:2-16.)

Miller provides no indication as to the significance of his vaguely-stated "Investigation Methods," or how such methods support his findings and conclusions. His report references aerial imagery, prior art, interview of tenant(s), a general inventory of damages, and limited-intrusive testing, yet provides no further information relating to any of these purported methods, leaving the reader to guess as to their meaning or relevance. In two short paragraphs on the second page of his report, Miller purportedly summarizes weather data he pulled pertaining to the date of loss, but does not provide any explanation for how such information supports his conclusion that the wind caused damage to the Property. (*See* Ex. C, at MID 000738.) In fact, the Verisk Wind Report (Appendix D to Miller's report) states that a wind event occurred at the Property on November 11, 2015, which produced gusts 20 MPH greater than those that occurred

on the date of loss, yet his report conveniently omits any discussion of this event. (Ex. D, at Auto-Owners000560.)

Miller also cites to the International Building Code ("IBC") as the "relevant code", yet offers no explanation as to how the IBC applies to Plaintiff's property or is related to his conclusions. Miller never opines in his report or elsewhere that the Property sustained winds on the date of loss which exceeded those that the building should have been designed to withstand under the applicable code.

For the forgoing reasons, Miller's report is deficient and should be excluded on its face, because it is conspicuously lacking an explanation of the methodology used by Miller and the supporting data that Miller collected or relied upon to assess whether the Property was damaged by wind and whether it should be replaced.

**B. Miller's Opinions Are Neither Relevant Nor Reliable**

Should the Court determine that Miller's report offers sufficient explanation to determine whether Miller's methodology and reasoning are valid, the Court's inquiry does not end there. The "[e]xpert testimony must be both relevant and reliable to be admissible." *McCoy v. Whirlpool Corp.*, 2008 WL 2808927, at *2 (10th Cir. 2008) (citing *Daubert*, 509 U.S. at 589, 594-95). "The threshold inquiry in any dispute over the admissibility of evidence is whether the evidence is relevant." *Black v. M&W Gear Co.*, 269 F.3d 1220, 1227 (10th Cir. 2001) (citing *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 777 (10th Cir. 1999)). If Miller's testimony is not relevant, then it is inadmissible no matter how reliable it may be. *See* Fed. R. Evid. 402.

1. Miller's Opinions Are Not Based Upon Engineering or Scientific Principles

Miller's testimony is not relevant if his opinions fail to assist the trier of fact in understanding and determining a fact in issue. *Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 648 (10th Cir. 1991) (stating that under Rule 702, "the 'touchstone' of admissibility is helpfulness to the trier of fact"). "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92. Here, Miller's opinions are bereft of any scientific connection to accepted principles of engineering.

With respect to his first and seventh opinions contained in his report, Miller does not provide any basis to evaluate the methodology or reasoning behind his bald assertion that the store front was damaged by wind. Miller's analysis does not state how the wind storm caused damage to the Property or which components or elevations of the Property were damaged. Indeed, it was discovered during his deposition that Miller's purported investigation into the cause of alleged damage was incomplete; i.e., limited to only certain floors on two elevations of the Property, rather than the entirety of the four elevations Midtown claims require full replacement due to the storm. (*See* Ex. B, 86:16-88:17, 115:8-116:1; 152:2-13.)

As for the second, third and sixth opinions stated in his report, wherein he merely "concurs with Anchor Engineering," Miller admitted that he does not actually know what Anchor Engineering observed or what they were specifically referring to (e.g., "permanently deflected mullions"). (*Id.*, 166:14-167:13, 183:21-184:14.) Moreover, Miller did not apply any mathematical or scientific calculation to determine the extent to which mullions were "permanently deflected", system connections had failed, or glass framing had deflected beyond

its capabilities, and to what degree such failures/deflections are consistent with wind as opposed to other causes such as mechanical overload, wear and tear, inadequate construction and/or design, lack of maintenance, or deterioration. His report provides no evidence that he performed any calculations or analysis whatsoever to make an independent damages determination. Miller does not reference any reports or statistics demonstrating the tendency and frequency in which wind affecting a store front can result in the type of damage purportedly observed. Notably, at his deposition, Miller admitted that the claimed need to fully replace the store front was not due to the wind storm. (*See id.*, 185:24-186:22.)

Not only does Miller's report not explain or substantiate his "Investigation Methods" and the significance thereof, Miller's deposition testimony highlights how insufficient such methods were. For instance, while Miller's report states he reviewed prior art, such prior art did not include any service history or pre-loss photographs. (*Id.*, 144:24-146:21.) Miller acknowledged that a service history could have informed him as to the pre-loss condition of the building and possible changed his conclusions. (*Id.*, 123:10-20.) Additionally, when asked if any of the purported "limited-intrusive testing" that he performed assist him in reaching the conclusions contained in his report, Miller testified, "I don't recall that it did." (*Id.* at 155:3-6.) Although his report claims he reviewed applicable building codes and references the IBC, Miller admitted that he never determined which code was applicable to the construction of the building or how much force such code called for. (*See id.*, 156:1-11.) Notwithstanding, he also testified that he would have expected a building's store front, properly constructed in accordance with such code, to be able to withstand the force of the winds reported on the date of loss. (*See id.*, 110:19-111:3, 157:22-158:1.)

2. <u>Miller's Causation Opinion Must Be Excluded Because Miller Did Not Consider Alternative Causes of Damage to the Property</u>

In his report, Miller made no attempt to consider alternative explanations for the purported observations of damage to the store front of the Property, such as wear and tear, inadequate construction and/or design, lack of maintenance, deterioration, mechanical damage/overload, or even prior storms. Miller's opinions are therefore not reliable because they fail to account for, and rule out, other sources or events as a possible cause of damage to the store front. Miller's report omits any other alternative causes or contributing factors, despite Miller admitting that he observed these himself:

> Q. So based on your inspection on May 2, 2019, did you observe that the building did, in fact, have a lack of maintenance, or was it apparent?
>
> MR. BROWNLEE: Objection to form. You may answer.
>
> A. In general, I observed conditions that were consistent with lack of maintenance, yes.

(*Id.*, 109:11-18.)

> Q. Would you agree that the failure to properly maintain the curtain wall system contributed to its observed condition at the time of your inspections?
>
> A. Contributed to its observed conditions, yes.
>
> Q. Would you agree that a lack of -- or failure to properly maintain the curtain wall system could result in a failure of at least part of that curtain wall system?
>
> A. At least part of it, yes.

(*Id.*, 120:5-15.)

> Q. Would you agree, then, that wear and tear of those other components -- had there not been any wear and tear, they would have been able to withstand winds up to -- gusts up to 80 miles per hour?

A. To the extent that there was no wear and tear, there would have been a better chance that there would not have been damage by that wind event, yes.

(*Id.*, 121:3-9.)

Q. Well, I'm asking based on your observations, was there any point – or any component of the property that you believe was damaged by wind that was not also improperly maintained or had evidence of wear and tear?

A. I would -- to the extent I don't have that opinion, as we sit here today, that would be part of an additional analysis at this time, if hired to do so.

(*Id.*, 192:23-193:5; *see also id.* at 139:18-141:2.)

If there are other plausible causes of damage, an engineering expert must offer evidence excluding those causes with reasonable certainty. *See, e.g., Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F. Supp. 2d 805, 836-37 (S.D. Tex. 2013) (excluding mechanical engineer's conclusion regarding cause of seal leakage, where engineer failed to rule out other possible causes of leakage). Because Miller made no effort to rule out other causes of damage to the store front, Miller's opinion that the storm caused damage lacks a reliable basis. *Id.*

An expert must "employ[ ] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). Because Miller attempts to generate a damages conclusion that is contingent on seemingly no data, his opinions are plagued by analytical gaps between the data cited and the conclusions drawn.

3. <u>Miller's Methodology Cannot Be Verified by the Engineering Community</u>

Courts have recognized that an expert's opinions are not reliable under *Daubert* if they are founded on data that other experts in the field would not reasonably rely on in forming similar opinions. *See Total Containment, Inc. v. Dayco Prod., Inc.*, No. 1997-CV-6013, 2001

WL 1167506, at *4 (E.D. Pa. Sept. 6, 2001) ("Courts must also assess whether the expert relied on data reasonably used by economic experts and had good grounds to rely on such data in drawing conclusions."); *Fail-Safe, L.L.C. v. A.O. Smith Corp*., 744 F. Supp. 2d 870, 888 (E.D. Wis. 2010) ("Use of outdated or suspect data as the base of an expert's testimony are proper grounds to exclude that testimony."). There is no acknowledgement in his report that Miller's opinions have been peer reviewed or are supported by any references to scientifically reliable peer review literature, engineering test results, or research.[2]

It is not plausible from Miller's report to determine whether the methods and data relied upon by him are generally accepted in the engineering community. Likewise it is impossible to determine whether Miller's methodology has been tested or the known or potential rate of error inherent in Miller's methodology because no such methodology exists.

As courts applying *Daubert* have emphasized, when scientific evidence is offered, "the expert's bald assurance of validity is not enough. Rather, the party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995). Miller's testimony must be reliable at each and every step or else it is inadmissible. "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir.

[2] Miller alleged at his deposition that his business partner, Byron Anderson, "performed a back check" of his report, but acknowledged there was no reference of Mr. Anderson's purported review in his report or file material. (Ex. B, 20:20-21:4).

2007). In other words, Auto-Owners does not have to prove Miller's findings and opinions are inaccurate. Rather, Plaintiff must demonstrate the validity of Miller's findings and methodology. "[T]he party proffering the evidence must explain the expert's methodology and demonstrate in some objectively verifiable way that the expert has both chosen a reliable scientific method and followed it faithfully." *Daubert,* 43 F.3d at 1319 n.11. As explained herein, Plaintiff cannot meet this burden.

## CONCLUSION

For the foregoing reasons, the Court should exclude the opinions of Plaintiff's expert Thomas Miller. In the alternative, and if the Court deems appropriate, Auto-Owners requests an evidentiary hearing to determine the sufficiency of Miller's opinions under Rule 702.

Dated: September 30th, 2021

Respectfully submitted,

*s/William M. Brophy*

Terence M. Ridley
William M. Brophy
Spencer Fane LLP
1700 Lincoln Street, Suite 2000
Denver, CO 80203
Telephone: 303.839.3800
Facsimile: 303.839.3838
Email: tridley@spencerfane.com
wbrophy@spencerfane.com

Attorney for Defendant,
Auto-Owners Insurance Company

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on September 30, 2021, I electronically filed the foregoing **DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF THOMAS E. MILLER PURSUANT TO FED. R. EVID. 702** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Michael G. Brownlee**
  Michael@brownleelawllc.com, claire@brownleelawllc.com

- **Robert William Loree**
  rob@lhllawfirm.com, cassie@lhllawfirm.com, rosy@lhllawfirm.com

*s/Amy Rutherford*