IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-01594-PAB-STV

MIDTOWN INVESTMENTS, LP, a Delaware foreign limited partnership,

      Plaintiff,

v.

AUTO-OWNERS INSURANCE COMPANY, a Michigan corporation,

      Defendant.

---

## ORDER

---

    This matter is before the Court on Defendant's Motion to Exclude the Testimony of Taylor Bezek Pursuant to Fed. R. Evid. 702 [Docket No. 67] and Defendant's Motion to Exclude the Testimony of Thomas E. Miller Pursuant to Fed. R. Evid. 702 [Docket No. 66]. Plaintiff Midtown Investments LP ("Midtown") opposes both motions. *See* Docket Nos. 73, 74. The Court has jurisdiction under 28 U.S.C. § 1332.

    Midtown filed this case on May 14, 2020 in the District Court for the City and County of Denver, Colorado. Docket No. 3 at 1. The complaint alleged breach of contract, statutory bad faith, common law bad faith, and unjust enrichment.[1] *See id.* at 5-7, ¶¶ 25-43. The Court has dismissed Midtown's breach of contract claim as untimely. Docket No. 50 at 10.

---

[1] Midtown dismissed its claims for common law bad faith and unjust enrichment. Docket No. 199.

## I. BACKGROUND

This is a case arising from Auto-Owners Insurance Company's ("Owners") denial of Midtown's claim for damage to a property (the "Property") located in Denver, Colorado.  Docket No. 67 at 2-4.  Owners issued an insurance policy to Midtown providing coverage for the Property.  *Id.* at 2.  Midtown submitted a claim to Owners for damage to the Property that it alleges occurred during a windstorm on April 17, 2018.  Docket No. 73 at 3.  Midtown disclosed Taylor Bezek and Thomas Miller as non-retained expert witnesses pursuant to Fed. R. Civ. P. 26(a)(2)(C).  Docket No. 67-4 at 4-5.

In February 2019, Midtown retained C3 Group, Inc. ("C3") to assist Midtown in pursuing its insurance claim with Owners.  Docket No. 74 at 3-4.  The contract between Midtown and C3 states that C3 will receive "10% of the total recovered amount of the claim" Midtown submitted to Owners, including "funds recovered via litigation."  Docket No. 67-1 at 1.  The contract states, "[r]ecovery is based upon the full Replacement Cost Value (RCV) plus any additional funds acquired via the above means," including litigation.  *Id.*  Mr. Bezek is an employee of C3.  Docket No. 74 at 1.  In May 2019, C3 hired JRB Service ("JRB") to help estimate the extent and cost of damage to the Property.  *Id.* at 4.  Mr. Bezek collaborated with JRB, inspected the Property, and communicated with Owners' representatives during the adjustment of plaintiff's claims.  *Id.*

C3 also hired an engineer, Thomas E. Miller of Structural Engineering and Inspections Inc. ("SEI"), to inspect the property, to review the "provided prior art," and to prepare a report on his findings.  Docket No. 73 at 4.  Mr. Miller reviewed written

materials related to the Property and the windstorm between April and July 2019.  *Id.*

He inspected the Property twice in May 2019.  *Id.*  On or about July 1, 2019, Mr. Miller

provided a report to C3 on the Property.  *Id.*

## II.  LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides that:

A witness who is qualified as an expert by knowledge, skill, experience,
training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will
help the trier of fact to understand the evidence or to determine a fact in
issue; (b) the testimony is based on sufficient facts or data; (c) the
testimony is the product of reliable principles and methods; and (d) the
expert has reliably applied the principles and methods to the facts of the
case.

Fed. R. Evid. 702.  As the rule makes clear, while required, it is not sufficient that an

expert be qualified based upon knowledge, skill, experience, training, or education to

give opinions in a particular subject area.  Rather, the Court must "perform[] a two-step

analysis."  *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006).

After determining whether the expert is qualified, the proffered opinions must be

assessed for reliability.  *See id.*; Fed. R. Evid. 702 (requiring that the testimony be

"based on sufficient facts or data," be the "product of reliable principles and methods,"

and reflect a reliable application of "the principles and methods to the facts of the

case").

In ruling on a Rule 702 motion, the district court has a "gatekeeper function to

'ensure that any and all scientific testimony or evidence admitted is not only relevant,

but reliable.'"  *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)).  To perform that

function, a court must "assess the reasoning and methodology underlying the expert's

opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93). Where an expert witness relies on experience, the expert "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702, advisory committee notes). When examining an expert's method, however, the inquiry should not be aimed at the "exhaustive search for cosmic understanding but for the particularized resolution of legal disputes." *Daubert*, 509 U.S. at 597. It is the specific relationship between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute that renders testimony both reliable and relevant.

In addition to the witness having appropriate qualifications and methods, the proponent of the witness's opinions must demonstrate that the process by which the witness derived his or her opinions is reliable. *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008). "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*

While the proponent of the challenged testimony has the burden of establishing admissibility, the proffer is tested against the standard of reliability, not correctness, *see Allstate Sweeping, LLC v. City & Cnty. of Denver*, No. 10-cv-00290-WJM-MJW, 2011

4

WL 2173997, at *3 (D. Colo. June 2, 2011); the proponent need only prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *Crabbe*, 556 F. Supp. 2d at 1221.

Assuming the standard for reliability is met, the Court must ensure that the proffered testimony will assist the trier of fact. *See Kumho Tire*, 526 U.S. at 156; *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122-23 (10th Cir. 2006). "Relevant expert testimony must logically advance[] a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (quotations and citations omitted). In assessing whether expert testimony will assist the trier of fact, a court should consider "whether the testimony 'is within the juror's common knowledge and experience,' and 'whether it will usurp the juror's role of evaluating a witness's credibility.'" *Id.* at 476-77 (quoting *Rodriguez-Felix*, 450 F.3d at 1123).

Finally, Federal Rule of Evidence 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## III.  ANALYSIS

Owners moves to exclude Mr. Bezek based on his financial interest in the case. Docket No. 67 at 6-9.  Owners also challenges his qualifications, methodology, and reliability.  *Id.* at 9-10.  In addition, Owners moves to exclude the testimony of Mr. Miller.

Docket No. 66 at 1.  Owners argues Mr. Miller's report is insufficiently specific and that his testimony will be unreliable and irrelevant.  *See id.* at 5-14.

As an initial matter, the Court will address two issues that appear in both of Owners' motions.  First, Owners' motions fail to comply with the Court's Practice Standards, which state that a Rule 702 motion "shall identify with specificity each **opinion** the moving party seeks to exclude."  Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.G.  Owners fails to identify specific opinions of either witness to sufficiently guide the Court on the admissibility of the experts' opinions. Therefore, the Court denies Owners' motions to the extent they are general and fail to specify which opinions they apply to.

Second, Owners appears to mix the standards of a motion made pursuant to Fed. R. Civ. P. 26(a)(2)(B), Fed. R. Civ. P. 26(a)(2)(C), and Rule 702, despite only moving for exclusion pursuant to Rule 702.  Rule 26(a) governs the requirements for disclosure of witnesses.  Rule 26(a)(2)(B) provides that, if a "witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," the party offering the witness must supplement its disclosure with an expert report.  Fed. R. Civ. P. 26(a)(2)(B).  For other witnesses, Rule 26(a)(2)(C) applies, and the disclosure need only state "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify."  Fed. R. Civ. P. 26(a)(2)(C).  Under Fed. R. Civ. P. 37, a party who fails to properly disclose an expert witness as required under Rule 26(a)(2) may not "use that information or witness to supply evidence on a

motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Midtown disclosed Taylor Bezek and Thomas Miller as witnesses pursuant to Rule 26(a)(2)(C). Docket No. 67-4 at 4-5. Owners does not argue that Midtown should have disclosed either witness under Rule 26(a)(2)(B) or that their opinions should be excluded pursuant to Rule 37. *See generally* Docket Nos. 66, 67.[2] Owners, however, appears to argue that the disclosure standards for an expert witness disclosed under Rule 26(a)(2)(B) should apply to both experts. To the extent Owners argues that either expert will offer opinions that exceed the scope of their disclosures, the Court will not construe Owners' motions as Rule 37 motions for exclusion. *See O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d. 917, 925 (D. Colo. 2017) (ruling defendant's tactical choice to file a motion pursuant to Rule 702 as opposed to Rule 26 and Rule 37 does not call for the wholesale exclusion of testimony). The Court will only evaluate Owners' motions to the extent they are specific enough to meet the Court's practice standards and are based on the appropriate standards under Rule 702.

## A.  Taylor Bezek

Owners moves to exclude Mr. Bezek's testimony as unreliable based on the contingent nature of Mr. Bezek's compensation should Midtown recover damages in this case. Docket No. 67 at 6-9. Alternatively, Owners argues Mr. Bezek is unqualified and

---

[2] In Owners' reply brief for its motion to exclude the testimony of Thomas Miller, defendant argues that Midtown failed to meet the requirements of Fed. R. Civ. P. 26(a)(2). Docket No. 77 at 7-8. An argument raised for the first time in a reply brief is waived. *Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) ("[A] party waives issues and arguments raised for the first time in a reply brief.") (quoting *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011)).

that his testimony is unhelpful.  *Id.* at 9-10.  Midtown indicates that "Mr. Bezek will opine as to his inspections of the Property, including collaboration with JRB Service (and others) in the field, the extent of damage to the Property and the cause thereof, his interactions with [Owners'] representatives during the adjustment of Plaintiff's claim, and his impressions as to the reasonableness of their responses and demands based upon his experience with [Owners] versus his experience with other insurers and their claims handling procedure, demands, etc."  Docket No. 74 at 4.

### 1. *Contingency Fee*

Mr. Bezek is a public adjuster from C3.  *Id.* at 1.  Midtown retained C3 on February 12, 2019 to "measure & document [Midtown's] loss and present [its] claim to the insurance company for [wind] damage on or about April 17, 2018."  *Id.*at 3-4 (quoting Docket No. 67-1 at 1).  Owners alleges Mr. Bezek will receive a percentage of the amount C3 recovers on Midtown's insurance claim and, as a result, his compensation is contingent on the result of the litigation.  Docket No.  at 8.  Owners argues Colorado law prohibits expert witnesses from testifying if they have a contingent financial interest in the results of the litigation.  *Id.* at 7.

Midtown responds that Mr. Bezek does not have a direct financial interest in the litigation.  Docket No. 74 at 9-10.  Midtown argues that, because its contract is with C3 and not Mr. Bezek, "Mr. Bezek himself does not stand to directly earn the 10% contingent fee" C3 will receive.  *Id.* at 10.  Midtown states that the caselaw prohibiting experts from receiving contingency fees do not address "whether a Non-Retained Expert witness [i]s precluded from giving expert testimony due to a contingency fee agreement entered into by its employer long before litigation arose."  *Id.* at 12.

The Colorado Supreme Court has held that "[i]t is not improper to pay an expert or non-expert's expenses or to compensate an expert witness on terms permitted by law.  It is improper to pay any witness a contingent fee for testifying." *Murray v. Just In Case Bus. Lighthouse, LLC*, 374 P.3d 443, 450 (Colo. 2016) (quoting Colo. RPC 3.4, comment 3).

First, Midtown argues that C3's contingency fee is based on the "replacement cost value" of the insurance claim instead of the outcome of litigation.  Docket No. 74 at 1-2.  However, Midtown's argument is unsupported by the language of the contract between Midtown and C3.  The contract between Midtown and C3 states that C3 will receive "10% of the total recovered amount of the claim" including "funds recovered via litigation."  Docket No. 67-1 at 1.  The contract states, "[r]ecovery is based upon the full Replacement Cost Value (RCV) plus any additional funds acquired via the above means," including litigation.  *Id.*  Plaintiff provides no reason why this language limits C3's fee to "replacement cost value" or does not demonstrate that C3's payment will depend directly on the outcome of this litigation.  A contingent fee in litigation is one that "is contingent on the ultimate outcome of the case."  *City & Cnty. of Denver v. Bd. of Assessment Appeals of State of Colo.*, 947 P.2d 1373, 1379 (Colo. 1997) (quotations omitted).  The plain language of the contract ties C3's contingency fee to the outcome of this litigation.

Next, Midtown argues that C3's payment method for Mr. Bezek is not directly contingent upon Mr. Bezek's testimony.  Docket No. 74 at 9-11.  Rather, Midtown states that C3 will be compensated based on the outcome of Midtown's claim against Owners and that Mr. Bezek's compensation is dependent on the performance of C3 for an entire

quarter.  *Id.* at 10-11.  Pursuant to the agreement between C3 and Midtown, C3 will receive "10% of the total recovered amount of the claim" by Midtown against Owners. Docket No. 67-1 at 1.  Mr. Bezek testified at his deposition that C3 would receive a percentage of any recovery on Midtown's insurance claim and agreed that C3 stands to gain "twice as much [or] three times as much should Midtown pursue and prevail on claims against []Owners under the bad faith statutes."  Docket No. 67-2 at 6-7, 126:20-22.  Regarding his personal compensation, he testified that he receives "a revenue or profit share based on [the] total amount of revenue after overhead and expenses per quarter" that C3 receives.  *Id.* at 9, 162:15-17.  Although Mr. Bezek did not testify that he could calculate his exact payment based on Midtown's recovery, his testimony reveals that he understands the contract between Midtown and C3 to be directly impacted by this litigation and his compensation to be dependent on C3's earnings.  His understanding poses a danger that his testimony will be inappropriately motivated.

Midtown's attempts to demonstrate an attenuation between Mr. Bezek's compensation and C3's contingent fee are unpersuasive.  The Colorado Supreme Court has ruled that where an appraisal firm received a contingent fee and individual appraisers from the firm testified as witnesses that "[t]he appraisal firms should not have allowed their employees to act as appraisers or experts under the contingent fee agreements.  Likewise, knowing of the contingent fee agreements before making their appearances, the employees should not have proceeded to deliver their appraisals or expert opinions."  *City & Cnty. of Denver*, 947 P.2d at 1379.  Midtown argues this case is distinguishable because the court was determining whether the fee at issue was permissible under Colo. Rev. Stat. § 12-67-712, which does not apply to C3 or Midtown.

Docket No. 74 at 11.  Although § 12-67-712 does not apply to Midtown or C3, Midtown provides no reason why the court's analysis in *City & Cnty. of Denver* on what constitutes a contingency fee for an appraiser working for a firm should not apply in this case.  The court ruled that treating an appraiser receiving a contingency fee and a corporation receiving a contingency fee differently "would lead to absurd results" because "[u]nincorporated individual appraisers could not accept contingent fees but firms employing appraisers could" and "[a] significant disparity between professionals providing the same service would result."  *City & Cnty. of Denver*, 947 P.3d at 1380.

The Court finds that Mr. Bezek's compensation is contingent.  Although Mr. Bezek may be paid through his company, C3, his company's compensation from Midtown is directly related to whatever amount Midtown recovers from Owners.  Thus, the larger the recovery by Midtown against Owners, the larger the compensation amount that Midtown pays to C3, Docket No. 67-2 at 7, 126:11-25, and the larger his compensation from C3 is since his C3 compensation is based on the amount of revenue that C3 receives on a quarterly basis. *Id*. at 9, 162:1-12.  Even though Mr. Bezek is compensated through his company, which dilutes to some extent the contingency, the same concerns that have caused courts to question the appropriateness of allowing testimony from witnesses paid based on any recovery remain.  Mr. Bezek may "be improperly motivated to enhance his or her compensation and thus lose objectivity." *Buckley Powder Co. v. State of Colo.*, 70 P.3d 547, 559 (Colo. App. 2002).

Having established that Mr. Bezek receives a contingency fee, the Court must establish whether his testimony is admissible.  Senior Judge Marcia Krieger recently confronted the issue of experts receiving a contingency fee in *Hiland Hills Townhouse*

*Owners Ass'n v. Owners Ins. Co.*, No. 17-cv-01773-MSK-MEH, 2022 WL 2198262 (D. Colo. Feb. 8, 2022), and provided a thorough analysis of the caselaw.  In *Hiland*, the plaintiff retained a public adjuster in a hail damage case who was entitled to 10% of funds paid by the insurer pursuant to a settlement or litigation.  2022 WL 2198262, at *1. The defendant insurance company argued that the public adjuster should be excluded from offering expert testimony because of his contingency fee agreement.  *Id.*  Judge Krieger noted a line of cases beginning with *Tagatz v. Marquette University*, 861 F.2d 1040, 1042 (7th Cir. 1988), that finds experts who are paid on a contingent basis are competent to testify and it is up to the jury to assess how an expert's financial interest bears upon their credibility.  *Hiland*, 2022 WL 2198262 at *7.  Judge Krieger also noted a contrary line of cases derived from *Accrued Financial Services, Inc. v. Prime Retail, Inc.*, 298 F.3d 291 (4th Cir. 2002), finding that public policy concerns warrant disqualification of an expert with a financial interest in the litigation.  *Hiland*, 2022 WL 2198262 at *8.  Judge Krieger concluded that the Tenth Circuit did not appear to have addressed the issue.  *Id.* at *9.  The Colorado Rules of Professional Conduct state that it is improper to pay a witness a contingent fee for testifying.  *Id.*  However, the Colorado Supreme Court has declined to adopt a *per se* rule allowing or excluding contingent witness testimony and instructs trial courts to apply the Colorado equivalent of Fed. R. Evid. 403 in resolving challenges to experts paid on a contingent basis.  *Id.* (citing *Murray*, 374 P.3d at 443).  Accordingly, Judge Krieger found that the proper course for resolving the motion to exclude was to evaluate the issue under Rule 403.  *Id.* at *10-11. The Court agrees that it is appropriate to consider a Rule 403 balancing analysis

consistent with *Murray*.  Although, the parties here have not addressed Rule 403, the Court has sufficient background before it to address the issues presented.

The Court finds instructive the analysis in *Wheatridge Off., LLC v. Auto-Owners Ins. Co.*, 578 F. Supp. 3d 1187, 1210-11 (D. Colo. 2022).  The insurance company in *Wheatridge* made the same arguments as Owners makes here, namely, that the plaintiff's public adjuster had a conflict of interest because he was being paid on a contingency fee basis.  *Id.* at 1210.  The court distinguished *Murray* because the public adjuster in *Wheatridge* was offered as both a fact and expert witness.  *Id.* at 1211.  Given the public interest arguments against permitting an expert paid on a contingency fee from testifying, *id.* at 1211 ("Excluding Rothbauer's expert testimony is not a sanction . . . .  Rather, it is this Court exercising its gatekeeping function to protect the integrity of the judicial process."), the court permitted the public adjuster to testify as a fact witness to the "events that transpired during this claim process" given that he was a "key participant[ ]," but excluded the public adjuster's expert testimony.  *Id.*

In *Murray*, the court stated that courts must "balance the probative value of the evidence against the danger of unfair prejudice.  In so doing, trial courts should not exclude testimony from improperly compensated witnesses unless they determine that the testimony's danger of unfair prejudice substantially outweighs its probative value." 374 P.3d at 452.  The Court will balance the potential for unfair prejudice against the probative value of the opinions Midtown states Mr. Bezek will offer.

The Court finds that Mr. Bezek's opinion testimony, given his financial interest in the outcome of litigation, presents a danger of unfair prejudice to Owners that

substantially outweighs its probative value, but the danger of this prejudice will be sufficiently limited by restricting Mr. Bezek's testimony to that of a fact witness.

Mr. Bezek is expected to testify on "his inspections of the Property, including collaboration with JRB (and others) in the field, the extent of damage to the Property and the cause thereof, [and] his interactions with [Owners'] representatives during the adjustment of [Midtown's] claims."  Docket No. 74 at 4.  Plaintiff's disclosures state that Mr. Bezek's opinions will be based in part on his "inspections" and "observations."  Docket No. 67-4 at 4.  Regarding this testimony, Mr. Bezek may testify as a fact witness to events that transpired during the claim process and his own observations, but may not offer expert opinions.

Mr. Bezek is also expected to testify on the "extent of damage to the Property and the cause thereof."  Docket No. 74 at 4.  Midtown's disclosure state Mr. Bezek may testify about causation by opining on "information related to [] his investigation and evaluation of the wind loss and further damage caused thereby at the Property" and by opining that Owners' "conclusions that although the Property had been damaged during the windstorm, . . . that the existing damage was not due to the windstorm, . . . was unreasonable."  Docket No. 67-4 at 4.  As Owners points out, Magistrate Judge Varholak limited Midtown to one expert per topic in the scheduling order.  Docket No. 67 at 9 (citing Docket No. 39 at 1).  Midtown argues that Mr. Bezek's opinions on the cause of damage to the Property does not invade on the province of any of its other experts because his "testimony shall be based upon his personal observation, inspections, and experience in the field and is meant to supplement the testimony of [Midtown's] other Retained and Non-Retained Experts not [to] impede upon it."  Docket No. 74 at 14.

Limiting Mr. Bezek to testimony about his own observations as a fact witness will not prejudice plaintiff as Mr. Bezek is only expected to "supplement" testimony and, in Midtown's words, he "is not testifying as an engineer or wind speed expert." *Id.* Like in *Wheatridge*, 578 F. Supp. 3d at 1211, the prejudice to Midtown from excluding Mr. Bezek's opinions on causation will be minimal based on plaintiff's representation that other experts will be testifying on the same information.

Finally, Mr. Bezek is expected to testify as to "his interactions with [Owners'] representatives during the adjustment of [Midtown's] claim, and his impressions as to the reasonableness of their responses and demands based upon his experience with [Owners] versus his experience with other insurers and their claims handling procedure, demands, etc." Docket No. 74 at 4. Regarding the handling of Midtown's claim, Midtown's disclosure states that Mr. Bezek may testify on "Defendant's investigation, evaluation, and handling of Plaintiff's insurance claim; Defendant's failure to follow routine industry practices," and to "further testify that in his experience as a residential adjuster, that Defendant's investigation of Plaintiff's claim was inadequate, incomplete, and was one factor in Defendant's unreasonable handling of Plaintiff's insurance claim." Docket No. 67-4 at 4. Midtown retained Roger Grimm, an insurance specialist, as an expert witness. *Id.* at 2. Midtown states that he "may be offered to testify as to the fact that Defendant failed to follow routine industry practices and that Defendant's refusal to tender covered benefits in this case was unreasonable and in bad faith." *Id.*

Plaintiff argues Mr. Bezek is qualified to offer opinions regarding claim handling based on his "experience in the field" and cites its expert disclosures. Docket No. 74 at 14. Plaintiff's disclosure states that Mr. Bezek "has experience in insurance claims

practices and claims handling of large commercial wind losses" and cites his curriculum vitae.  Docket No. 74-2 at 5.  The portions of Mr. Bezek's curriculum vitae that are relevant to his qualifications to opine on claim handling procedures states that he was a public adjuster for four years and "[h]andled roughly 300 residential and commercial claims in a Public Adjuster capacity."  *Id.* at 18.  Additionally, it states that Mr. Bezek has been a director of public adjusting from May 2017 until present and that he "[a]ssist[s] in the claims handling process when needed," guiding his "team on maintaining standards and procedures consistent with the company mission."  *Id.*  Plaintiff's disclosure states that Mr. Grimm is qualified to opine on industry standards for claim handling because he "is an insurance specialist with over thirty-eight [] years' experience in the insurance industry" and because he "spent over 30 years as a property insurance administrator and executive and has substantial experience, qualifications, and expertise in the areas of Insurance Law and Bad Faith, including the standards of the insurance industry."  *Id.* at 3.  Plaintiff does not directly argue that Mr. Bezek is qualified to opine on industry standards or practices for claim handling.  Mr. Grimm's qualifications are stronger based on his time in the industry and experience specific to industry standards and bad faith claims.  Mr. Grimm's testimony on claim handling is sufficient to prevent prejudice to Midtown that may result from precluding Mr. Bezek from opining on claim handling.  The Court will limit Mr. Bezek's testimony to his observations as a fact witness on Owners' handling of Midtown's claim.  The Court finds that the probative value of Mr. Bezek's opinion testimony regarding claim handling is minimal based on Mr. Grimm's testimony regarding the same topics and is substantially outweighed by the danger of prejudice to defendant based on Mr. Bezek's financial interest in the outcome of the litigation.

### 2.  Reliability

Owners' remaining arguments regarding Mr. Bezek's testimony attempt to establish that he is unqualified, unreliable, and unhelpful as an expert witness.  Docket No. 67 at 9-12.  The Court will not reach these arguments as Mr. Bezek will be excluded as an expert witness.

### B.  Thomas Miller

Owners seeks to exclude Midtown's non-retained witness Thomas Miller from testifying pursuant to Rule 702.  Docket No. 66 at 1.  Owners also argues that Mr. Miller's report is insufficient to demonstrate the admissibility of Mr. Miller's testimony under Rule 702.  *Id.* at 5-8.  Finally, Owners argues Mr. Miller's opinions are not relevant and unreliable.  *Id.* at 8-14.

Midtown provided Owners with a report prepared by Mr. Miller on July 1, 2019. Docket No. 66-3 at 1.  For a witness that has been disclosed pursuant to Rule 26(a)(2)(C), the disclosure need only state "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify."  Fed. R. Civ. P. 26(a)(2)(C).  Midtown, as the proponent of the witness, has the burden of showing that Mr. Miller's testimony is reliable and admissible under Rule 702.  *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001); Fed. R. Evid. 702, Advisory Committee Notes to the 2000 Amendments ("[T]he admissibility of all expert testimony is governed by the principles of Rule 104(a).  Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence.").

Owners argues that Mr. Miller's report is the only document Midtown provides, in addition to Midtown's disclosures, in support of the admissibility of Mr. Miller's opinions under Rule 702.  Docket No. 66 at 5.  Midtown responds that Mr. Miller was not required to provide a report under Rule 26.  Docket No. 73 at 10-11.  Midtown has not provided the Court with an affidavit from Mr. Miller or supplemental information pertinent to the Rule 702 issues that Owners raises.  Instead, Midtown focuses its response to the Rule 702 motion on Midtown's obligations under Rule 26(a)(2)(C) and also cites excerpts from Mr. Miller's deposition.  *Id.*  Because defendant does not move to exclude Mr. Miller's opinions based on Rule 26, the question is not Midtown's compliance with disclosure rules, but whether Midtown can support the admissibility of Mr. Miller's opinions based on the standards of Rule 702.

Owners moves to exclude all seven opinions in Mr. Miller's report, Docket No. 66 at 6, namely:

- Opinion 1: Based on our inspections [Structural Engineering and Inspections Inc. ("SEI")] observed direct physical damage to the store front.

- Opinion 2: SEI concurs with Anchor Engineering that: "permanently deflected mullions were observed."

- Opinion 3: SEI concurs with Anchor Engineering that: "it is likely that several system connections had failed, allowing the glass framing to deflect beyond its capabilities, causing subsequent damage to the aluminum mullions and Sealant at the perimeter of the frames."

- Opinion 4: SEI concurs with Anchor Engineering that: "Short-Term Recommendations (for framing existing within 20' of the building corners):
  - Additional fastening at the jamb mullions, into the face of the CMU, shall be added:
    - ¼" x 1-¾" minimum embedment Hilti Kwik-CON II+ masonry screws shall be placed at 16" on center, centered vertically in the face of each block,
  - Head and sill connections shall be reestablished at each level:

- Steel Bent Plate 1/8" x 2" x 6" x 0'-1¾", long leg horizontal, shall be fastened to the face of the mullions with three (3) ¼-20 screws or to concrete with two (2) ¼" x 1-¾" minimum embedment Hilti Kwik-CON II+ concrete screws.

- Opinion 5: SEI concurs with Anchor Engineering that: "Short-Term Recommendations (for all other framing):
    - At the time of our observation the existing framing away from the building corners appeared to be intact and we recommend that they be periodically monitored for signs of distress or leakage.
    - Should there be signs of distress or leakage, our office should be contacted to provide additional recommendations."

- Opinion 6: SEI concurs with Anchor Engineering that: "Long-Term Recommendations:
    - Based on our site observation, the extent of the damage, the likelihood of future issues occurring, and upon completing engineering analysis of the existing framing in accordance with the currently adopted codes (mullions were determined to be incapable of supporting the code required wind pressures), we recommend removing and replacing all the existing glazing.
    - We recommend using a curtain wall system intended for multi-span construction and our office can be available to provide further specialty engineering services should a full analysis of a new system be required."

- Opinion 7: The store front was damaged as the result of a storm occurring on or about April 17, 2018.

Docket No. 66-3 at 5-6.

### 1. Opinion 1

Owners argues that Miller's first opinion, that "SEI observed direct physical damage to the store front," is unsupported by methodology or reasoning to support the assertion that the store front was damaged by wind. Docket No. 66 at 6-7. Mr. Miller's first opinion, however, does not comment on the cause of damage. Instead, it is a factual observation and not an expert opinion. The Court will allow Mr. Miller to testify about his observations of the damage as long as the observation does not include his opinions as to the cause of such damage.

### 2.  Opinion 2

Owners argues that Mr. Miller's second opinion, that "SEI concurs with Anchor Engineering that: permanently deflected mullions were observed," Docket No. 66-3 at 5, should be excluded.  Docket No. 66 at 9-10.  Owners argues that Mr. Miller testified that he does not know what specific mullions Anchor Engineering referred to, he does not apply any calculation to determine that deflection was permanent, and he does not know to what degree deflection was caused by factors other than wind damage.  *Id.*  To the extent Mr. Miller testifies about damage to mullions that he observed, such observations are limited to factual observations and may not include an endorsement of Anchor Engineering's observations or opinions.  As Midtown points out, it is not necessary for Mr. Miller to identify specific mullions that Anchor Engineering observed in order for Mr. Miller to have observed that some mullions were deflected.  *See* Docket No. 73 at 12.  Thus, this part of defendant's motion is denied.

### 3.  Opinions 3 and 6

Owners argues that Mr. Miller's third opinion, that "SEI concurs with Anchor Engineering that: 'it is likely that several system connections had failed, allowing the glass framing to deflect beyond its capabilities, causing subsequent damage to the aluminum mullions and Sealant at the perimeter of the frames,'" Docket No. 66-3 at 5, and his sixth opinion, concurring with Anchor Engineering's long-term recommendations, should be excluded.  Docket No. 66 at 9-10.  Owners believes that these opinions should be excluded because Mr. Miller testified that he does not know how Anchor Engineering reached its conclusions, Mr. Miller did not apply any

mathematical or scientific calculations to determine the extent of the damage or the cause of the damage, and that his "investigation methods" were inadequate. *Id.*

In response to Owners' Rule 702 challenge to opinion 3, Midtown provides no explanation of how Mr. Miller determined that the system connections failed or how such failure resulted in deflection of glass framing or damage to mullions or sealant. *See* Docket No. 73 at 10-15.  Midtown also fails to explain how Mr. Miller reached Opinion 6 on future recommendations.  *Id.*  Midtown argues that Mr. Miller's report did not need to include his methodology because Midtown did not retain him as an expert in anticipation of litigation.  *Id.* at 14-15.  However, as noted above, Midtown's retention of Mr. Miller before litigation does not somehow exempt his opinions at trial from the requirements of Rule 702.  Midtown has not fulfilled its burden to establish the basis for Mr. Miller's opinions on the system connections or on the required remedial steps needed in the future.  The Court will therefore exclude Mr. Miller's third and sixth opinions as unreliable based on the lack of methodology and foundation supporting his opinions.

### 4.  Opinions 4 and 5

Mr. Miller's fourth and fifth opinions concur with Anchor Engineering on short-term recommendations for necessary repairs to the property.  Docket No. 66-3 at 5. Owners does not identify any specific reasons why Mr. Miller's fourth and fifth opinions should be excluded, but its argument that Mr. Miller's opinions concurring with Anchor Engineering are inadmissible without any evidence of his own analysis or independent investigation because they lack a "valid scientific connection to the pertinent inquiry" applies in equal force.  Docket No. 66 at 9-10.  Like Mr. Miller's concurrence with

Anchor Engineering's long-term recommendations, Midtown fails to describe how Mr. Miller reached his opinions on short-term recommendations.  Docket No. 73 at 11-12.  Accordingly, the Court will exclude Mr. Miller's fourth and fifth opinions as unreliable based on the lack of methodology and foundation supporting his opinions.

### 5.   Opinion 7

Owners argues Mr. Miller's seventh opinion, that "[t]he store front was damaged as the result of a storm occurring on or about April 17, 2018," Docket No. 66-3 at 6, should be excluded because Mr. Miller's report lacks a basis for the conclusion that the storm is what caused damage.  Docket No. 66 at 9.  Owners points out that alternate causes "such as wear and tear, inadequate construction and/or design, lack of maintenance, deterioration, mechanical damage/overload, or even prior storms" are not considered and argues that any opinions from Mr. Miller on the cause of damage should be excluded.  *Id.* at 11.  Midtown responds that "just because Mr. Miller did not exclude all other potential causes in his report, does not mean that he did not consider them in forming his opinions and [Owners] had the opportunity to question Mr. Miller regarding this in his deposition."  Docket No. 73 at 14.  Additionally, Midtown argues that an expert is not required to exclude every alternative cause of damage in order to provide reliable testimony.  *Id.*

Mr. Miller testified that he observed conditions consistent with a lack of maintenance that could contribute to damage of the Property.  Docket No. 66-2 at 10, 109:11-23.  Mr. Miller also testified that damage was caused by wind.  *Id.*, 109:7-10.  The Tenth Circuit has ruled that when opining on the cause of damage to a building, that a failure to eliminate possible alternate causes "only go to the weight of [the

expert's] opinion about the cause of property damage, and have no bearing on the admissibility of his opinion."  *McDonald v. N. Am. Specialty Ins. Co.*, 224 F. App'x 761, 766–67 (10th Cir. 2007) (unpublished) (collecting cases ruling that alternative causation arguments attack the weight of testimony instead of its admissibility).  Accordingly, the Court will not exclude Mr. Miller's opinions on causation solely because he acknowledges there may have been other causes of damage.

Owners also argues that Mr. Miller's report "does not include the fundamental explanation or observations from those inspections that support how or why he determined that there was damage to the Property and why he believes such damage was caused by wind" or why he believes damage was caused by the storm on April 17, 2018.  Docket No. 66 at 6-7.  Midtown argues that Mr. Miller relied on his own "observations, inspection, photos, measurements, etc."  Docket No. 73 at 10.  Mr. Miller's report states that he performed inspections of the Property on May 2, 2019 and May 15, 2019 and that he reviewed a wind history report from April 17, 2018, a photo catalog that was provided to him, a report by Anchor Engineering, a repair proposal prepared by JRB, and the 2018 building code for existing buildings.  Docket No. 66-3 at 3-4.  His report also includes the materials he reviewed.  His report, however, does not explain how he used these materials to reach opinions on the cause of any damage, including by wind, or how he determined when any wind damage occurred.  *Id.*  Outside of pointing to the materials Mr. Miller relied on, Midtown does not explain his methodology or explain how the photos or reports he reviewed would allow him to reach any conclusions on how wind caused damage.  Docket No. 73 at 14-15.  Additionally, there is no explanation of how he determined any wind damage was caused by the

23

storm on April 17, 2018.  *Id.*  Because Midtown does not provide any explanation of Mr. Miller's methodology for determining how any damage he observed occurred and because Midtown fails to show how Mr. Miller linked any damage to the storm on April 17, 2018, the Court will exclude his opinions on causation and exclude the seventh opinion in his report.

### 6.  Conclusion

The Court will grant Owners' motion regarding Mr. Miller in part and deny Owners' motion in part.  Mr. Miller is precluded from offering the following opinions: Opinion 3, Opinion 4, Opinion 5, Opinion 6, and Opinion 7.  Mr. Miller may testify to his own observations of damage, but not his opinion as to how it was caused (e.g., by wind or water) or when it was caused.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's Motion to Exclude the Testimony of Taylor Bezek Pursuant to Fed. R. Evid. 702 [Docket No. 67] is **GRANTED**.  It is further

**ORDERED** that Defendant's Motion to Exclude the Testimony of Thomas E. Miller Pursuant to Fed. R. Evid. 702 [Docket No. 66] is **GRANTED in part** and **DENIED in part**.

DATED November 17, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

24